THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| MICHELLE HALL, ) | Case No. | 2:15-CV-00044 DS |
| Plaintiff, ) | | |
| vs. ) | MEMORANDUM DECISION AND ORDER | |
| CAROLYN W. COLVIN, ) Acting Commissioner Social Security Administration, ) | | |
| ) | | |
| Defendant. ) | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.  INTRODUCTION

Plaintiff Michelle Hall filed an application for Social Security benefits alleging a disability beginning on July 1, 2011.  She was 31 years of age at the alleged onset date. Her application was denied initially and on reconsideration.  After an administrative hearing, an administrative law judge ("ALJ") concluded at  step four of the five-part sequential evaluation process[1], that Plaintiff has the residual functional capacity to perform the requirements of her past relevant work and, therefore, is not disabled.  Plaintiff's request for review was denied by the Appeals Council.

Ms. Hall now seeks judicial review of the decision of the Commissioner of Social Security denying her claim for benefits.  She  contends that the ALJ erred in that: (1) he improperly evaluated the medical opinion evidence from Dr. Seegmiller her treating

---

[1] See 20 C.F.R. § 416.920.  See also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988)

podiatrist; (2) he failed to properly evaluate Plaintiff's ability to ambulate; and (3) he failed to properly evaluate Plaintiff's credibility.

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision only to determine if the factual findings are supported by substantial evidence and if he applied the correct legal standards. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995). Substantial evidence is "more than a mere scintilla," and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

## III. DISCUSSION

**A. Evaluation of Treating Physician Dr. Seegmiller's Medical Opinion.**

The Court rejects Plaintiff's first claim that the ALJ improperly evaluated the opinions of David Seegmiller, D.P.M. her treating podiatrist of many years. The ALJ stated that he gave only partial weight "to the opinion of her treating doctor" as it related "to the severity of her pain and her limitations" and did "not give any of the treating doctor's opinions controlling weight because of lack of supporting evidence and because of the reasonable conflicting opinions from other sources." R. 48, 49.

Plaintiff contends that the ALJ's statement is not supported by the record which contains ample support for Dr. Seegmiller's opinions. Plaintiff also urges that the ALJ erroroneously relied on the testimony of Ronald Devere. M.D., a neurologist called as a

medical expert ("ME"), who stated that he was not testifying as an orthopedist or foot specialist. Without the testimony from the medical expert regarding the severity of her orthopedic issues, Plaintiff argues that the ALJ does not have substantial evidence that would support the rejection of Dr. Seegmiller's testimony.

The ALJ must give substantial weight to the evidence and opinions of the claimant's treating physicians unless good cause is shown for a finding to the contrary. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)("ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record"). A treating physician's opinion may be rejected if it is not "well supported by clinical and laboratory diagnostic techniques" and if inconsistent with other substantial evidence of record. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 ("decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence ..., and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

The ALJ's decision is consistent with the above requirements. For example, citing to the record the ALJ rejected Dr. Seegmiller's opinion that Plaintiff must lie down for two hours in an eight-hour workday as not consistent with the record evidence finding that the "evidence as a whole indicates that the claimant can control her foot pain by limiting work on her feet and refraining from activities and conditions that aggravate the pain, like working as a crossing guard (10F p.1), sitting on her feet (10F p.3), standing a lot (15F

p.12), and sitting on her legs Indian style (15F p.6)." *See* R.. 47. Additionally, as the Commissioner notes, none of the examination notes reflect that Plaintiff reported that she needed to lie down or that Plaintiff was directed to lie down by any of her practitioners. *See* R. 346-85, 399-529, 537-50, 554-89, 590-606, 666-91.

Citing to the record, the ALJ observed that Plaintiff's pain is not continuous, that it changes locations and causes, that Plaintiff reported significantly reduced pain after right foot surgery, and that while Plaintiff experienced a variety of foot impairments that caused her pain, many resolved with treatment and none were disabling. *See* R. 48. And as the Commissioner notes, there is no record evidence that Plaintiff ever complained of foot pain when she saw her general practitioner. *See, e.g.,* R. 383-529, 590-606. However, on one occasion only, Plaintiff complained of worsening foot pain to Michael A. Gomez, PA-C on a visit to the office of her general practitioner. R. 437.

Based on record evidence the ALJ found that Dr. Seegmiller's noted limitations for Plaintiff, such as the inability to ambulate effectively, were inconsistent with Plaintiff's own statements. The ALJ stated: "Other testimony by the claimant indicates that she can walk up stairs with use of a handrail, though with pain. That claimant said in one statement that she can walk 10-20 minutes before needing to stop and rest (4E p. 6; 8E p. 6) She also said in one statement that she shops in stores 1-2 times a week for 1-2 hours (4E p. 4). Her husband indicates she cannot carry their 30-pound son any longer than 10-15 minutes while walking around (15 E p.1)." R. 43. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013)(finding that substantial evidence supported the ALJ's decision discounting the treating physician's opinion that the claimant had extreme limitations based on the claimant's daily activities). Additionally, as the Commissioner notes, although Plaintiff

reported that she quit working as a TSA agent because of foot pain, record evidence contemporaneous with her decision to quit suggest otherwise. *Compare* R. 82-83 *with* R. 365. Plaintiff reported to Dr. Seegmiller that she quit her job "due to pain in feet and desire to stay home with child. States she feels like she could work even with the discomfort." R. 365.

As for Plaintiff's position that the ALJ improperly rejected the testimony of Dr. Seegmiller based on the testimony of Ronald Devere, M.D., the Court finds no error. A neurologist, Dr Devere was called as a medical expert because Plaintiff argued that Dr. Seegmiller's assessment established that she met the criteria of listing 1.02.[2]  R. 42. Dr. Seegmiller diagnosed Plaintiff with bilateral plantar fasciitis, tarsal tunnel syndrome,

---

[2] Listing 1.02 concerns the major dysfunction of a joint. *See* 20 C.F.R. pt. 404, subp P, appx. 1, § 1.02.

and subtalar joint capsulitis.  Op. Br. at 6, 11; R. 687-688.[3]  The ME testified that without an EMG a diagnosis of tarsal tunnel can't be made.  R. 73.  He was not convinced that Plaintiff has any neurological problem or tarsal tunnel syndrom. [4] *Id*

The Commissioner notes, without controversy, that "[t]he preamble to the musculoskeletal listings (1.00, et seq.) explains that the physical examination must include a detailed description of, inter alia, neurological findings appropriate to the specific

---

[3]In this regard, the ME testified, in part, as follows:

> A.  Well, the main thing that I see in the records ... is that there's some problems with the –the claimant's foot.  And the diagnoses that were tossed around ... is a tarsal tunnel, which is an entrapment of the – one of the small nerves at the ankle versus something called plantar fasciitis, which is a pain disorder of the foot from inflammation and is a different kind of disorder than tarsal tunnel.  The neurological ... exam was basically normal.  There was no sensory loss in the feet.  The muscle strength was normal.  There was no atrophy.  And the diagnosis was based on probably the fact that there was pain in the ankle and there's a test that we, we use which is not diagnostic call [sic] tanell [sic](PHONETIC).  And what that means is if you tap the medial side of the ankle where the – your big bone is at the ankle, you sometimes can reproduce tingling in the nerve if you tap the nerve, you know, with a reflex hammer, much the same in the hand. ... That it itself [sic] is not a diagnosis.  It is made also by electrical studies, which is an ENG [sic] and I do not see any evidence from the record that there was an ENG [sic] was done.

R.  68-69.

[4]From this and other testimony, the ALJ stated: "The medical expert testified that the record shows that the claimant does not meet any neurological listing for tarsal tunnel syndrome, a neurological entrapment, or plantar fasciitis, which is a pain disorder with inflammation."  R. 42.  The ALJ further noted: "The medical expert did not address to [sic] orthopedic issues as separate from the neurological issues related to the feet.  The claimant argues that the treating foot specialist's assessment (15F) shows that the claimant meets the criteria of listing 1.02 for orthopedic reasons."  (*Id.*).

impairment being evaluated"[5] and that "[t]wo of Plaintiff's impairments the ALJ found to be 'severe' have a neurological component." Ans. Br. at 7-8 (footnote omitted). It was reasonable, therefore, for the ALJ to receive testimony from a neurologist in the context of determining whether Plaintiff met one of the listings.[6] Other than instances that don't appear to apply here, see Ans. Br. at 8, n.5, the ALJ has the discretion to receive ME testimony and to determine the appropriate medical specialty of the ME. Hearings, Appeals, and Litigation Law manual (HALLEX) I-2-5-36C.[7] Additionally, as discussed in Section B below, Plaintiff's claim that her foot impairments met Listing 1.02 requires her to show involvement of a major peripheral weight-bearing joint resulting in an inability to ambulate effectively. The ALJ rejected Plaintiff's Listing 1.02 argument because he found

---

[5] See 20 C.F.R. pt. 404, subpt. P, appx. 1 § 1.00.D ("The physical examination must include a detailed description of the rheumatological, orthopedic, neurological, and other findings appropriate to the specific impairment being evaluated.").

[6] The Court finds no merit in Plaintiff's position that the ALJ erred by not mentioning Dr. Seegmiller's letter dated Sept. 5, 2013 submitted after the hearing. The letter stated, among other things, that the ME's emphasis on EMG testing was misplaced on Plaintiff's specific issues. The ALJ does not state that he did not consider the letter. Indeed, the ALJ stated, "I do not give any of the treating doctors opinions controlling weight because of lack of supporting evidence and because of reasonable conflicting opinions from other sources." R. 49. In this case the ME testified that there was no EMG study which would be needed for diagnosis of tarsal tunnel. R. 73-74. The ALJ noted as much as a reason for finding that Plaintiff did not have a listed impairment. R. 42.

[7] The ALJ stated:
The medical records indicate that the claimant's foot problems were neurological (tarsal tunnel syndrome, neuroma, peroneal nerve entrapment), arthritis, heel spur, fasciitis, and subtalar capsulitis, which were described as doing well and appeared to have resolved (10F p.1). There is no radiological or other appropriate medically acceptable imaging evidence of joint dysfunction in the record as is required to meet listing 1.02.
R. 43.

that Dr. Seegmiller's opinion, that Plaintiff could not ambulate effectively, was contradicted by Plaintiff's testimony and other evidence of record.

The record, including ME Ronald Devere, M.D.'s testimony, reasonably can be viewed as not supporting Dr. Seegmiller's limitations. Plaintiff did not experience sensory abnormalities and had normal neurological examinations and strength in her lower extremities. *See*, e.g. , R. 69, 348, 554, 561, 569. The record also reflects that Plaintiff cared for herself independently, got pregnant and later cared for her infant child, drove, shopped, prepared meals, and cared for the home. R. 76-77, 237, 238, 532. *See Castellano v. Sec'y of Health and Human Servs.* 26 F.3d 1027, 1029 (10th Cir. 1994)(claimant's daily activities were a reason for rejecting treating physician's opinion that the claimant was totally disabled).

As to Plaintiff's observation that the disability determination services (DDS) physicians assessed Plaintiff with a sedentary RFC, the Court agrees with the Commissioner that the "fact has no bearing on the validity of the ALJ's decision that Plaintiff could perform her past sedentary work (Tr. 49-50)".[8] Ans. Br. at 9.

**B. Evaluation of Plaintiff's Ability to Ambulate.**

Ms. Hall urges that the ALJ's finding regarding whether she met or equaled a listing was not supported by substantial evidence due to his failure to properly define the inability to ambulate effectively. Plaintiff contends her testimony that it was "a little harder" to walk

---

[8]The Court agrees with the Commissioner that Plaintiff fails to show how the DDS opinions and the ALJ's RFC amounts to reversible error. *See Shinseki v. Sander*, 556 U.S. 396, 409 (2009)(citations omitted) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

on rough or uneven surfaces and Dr. Seegmiller's opinion that she was unable to walk more than one block on rough or uneven ground is sufficient evidence to demonstrate that she meets this portion of listing 1.02 because she is unable to ambulate effectively.

At the hearing before the ALJ, Plaintiff's counsel, as noted, urged that her bilateral foot impairments met Listing 1.02, which requires the claimant to show involvement of one major peripheral weight-bearing joint resulting in an inability to ambulate effectively. During testimony, when Plaintiff was asked if she could walk on rough or uneven surfaces, "like at a park or something", she responded: "It's a little harder for me because I don't have feeling in the bottom of my right heel so I kind of have to take it at a slower pace and it does make it a little more painful, compensation with the other foot." R. 88. Dr. Seegmiller her treating doctor had opined that Plaintiff is not able to walk one block or more on rough or uneven ground. R. 667.

The Court finds no error in the ALJ's evaluation of Plaintiff's ability to ambulate.[9] The ALJ concluded that Ms. Halls's testimony did not establish an inability to ambulate effectively because "her testimony does not indicate that she cannot walk on uneven

---

[9] Functional loss for purposes of a musculoskeletal impairment is defined as the "inability to ambulate effectively on a sustained basis" and "must have lasted, or be expected to last, for at least 12 months." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 1.00 B(2)(a).

surfaces at a reasonable pace." [10] R. 43. He cited other record evidence that Plaintiff can ambulate effectively. [11] *See id.* And he concluded that the opinion of Dr. Seegmiller was contradicted by Plaintiff's testimony. Plaintiff points to no other evidence that she is unable to ambulate effectively. In sum, the ALJ cited record evidence and testimony from which he could reasonably conclude that Plaintiff could ambulate effectively as defined and, that Dr. Seegmiller's statement to the contrary was inconsistent with other evidence of record.

### C. Evaluation of Plaintiff's Credibility.

Lastly, Plaintiff contends that the ALJ's stated reasons for finding Plaintiff not credible are not supported by substantial evidence. *See* Op. Br. at 15-16.

"'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). Among the factors the ALJ may consider in evaluating a claimant's complaints are "the levels of [her] medication and [its] effectiveness, ... the frequency of [her] medical contacts, the nature of [her] daily activities,

---

[10]Examples of ineffective ambulation include, but are not limited to:

> the inability to walk without the use of a walker, two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 1.00 B(2)(b)(2).

[11]"Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 1.00 B(2)(b)(1).

subjective measures of credibility that are peculiarly within the judgment of the ALJ, ... and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Id.* The ALJ was not required to set forth "a formalistic factor-by-factor recitation of the evidence" he relied on in evaluating Plaintiff's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility", the credibility determination is adequate. *Id.* If the ALJ disbelieved claimant's allegations, he must explain what evidence led her to conclude the claimant's allegations were not credible. *Kepler v. Chater*, 68 F. 3d. at 391.

The Court concludes that the ALJ fulfilled the above obligation and sees no need to belabor the issue. The ALJ summarized Plaintiff's subjective complaints, finding them partially credible, and stated his reasons for so finding . *See, e.g.*, R. 43-48. *See also* Ans. Br. at 13-15.

### IV. CONCLUSION

The Court concludes that the Commissioner's decision, that Plaintiff was not disabled within the meaning of the Social Security Act, is supported by substantial evidence of record and is not the result of any legal error which has been brought to the Court's attention.

Therefore, based on the foregoing reasons, as well as the Commissioner's opposing memorandum, Plaintiff's Complaint is dismissed and the Commissioner's

decision to deny Ms. Hall's applications for Social Security benefits is affirmed.

IT IS SO ORDERED.

DATED this 7th day of October, 2015.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT